[No. B126166. Second Dist., Div. Four. Nov. 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN M. MARTINEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of the opinion to be deleted are the sections entitled "Discovery" and "Sufficiency of Evidence."

490

## COUNSEL

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

A jury convicted appellant Juan M. Martinez of attempted murder and found pursuant to Penal Code section 12022.53, subdivision (d)[1] that appellant personally and intentionally discharged a firearm causing great bodily injury. The court sentenced appellant to a base term of five years for attempted murder plus an enhancement of twenty-five years to life as required by section 12022.53.

Angered at a store owner who forced appellant out of his store, appellant returned with a .22-caliber rifle and shot the owner, who suffered great bodily injury in the stomach. On appeal appellant contends the trial court erred in admitting certain evidence despite a pretrial discovery violation, the evidence is insufficient to show that appellant intended to kill, and imposition of the 25-year-to-life enhancement pursuant to section 12022.53 is cruel

---

[1] All further statutory references are to the Penal Code.

or unusual punishment. Finding no merit to these contentions, we affirm the judgment.

### FACTS

The victim, Francisco Perez, owned a furniture store in partnership with Maria Navarette. Appellant had been Ms. Navarette's boyfriend for about eight months. Appellant had been in the store regularly because of her, and there had been problems with his breaking things. On the afternoon of February 22, 1998, appellant was in the store and Ms. Navarette asked appellant to leave. Appellant refused to leave. Mr. Perez also told appellant to leave, because it appeared appellant was assaulting Ms. Navarette. When appellant again refused to leave, Mr. Perez grabbed appellant by the shoulder and pushed him out the door.

Appellant said "bad words" to Mr. Perez and said he was going to come back and kill him. Appellant left and obtained a .22-caliber rifle which he loaded. About 30 to 45 minutes later, appellant returned to the store and entered, holding the rifle pointed in Mr. Perez's direction, and said he was going to kill him. Mr. Perez picked up a telephone from a desk in order to call 911, but appellant fired a shot which hit the desk phone and caused Mr. Perez to drop the receiver.

Mr. Perez then moved in a direction which put Ms. Navarette, who was seated at the desk, between appellant and him. Appellant told Ms. Navarette to move. Mr. Perez dove toward the floor, and appellant shot him. The bullet went through Mr. Perez's leg and entered his stomach. When Mr. Perez stood back up, appellant ran out of the store. Mr. Perez was hospitalized 13 days and had 3 surgeries as a result of the shooting.

Appellant was arrested at home and led police to the rifle, which he admitted shooting at Mr. Perez. Appellant told the police he was angry at Mr. Perez, with whom he had "problems" before, because Mr. Perez slapped him, embarrassed him in front of his girlfriend, and "treated him like a kid" in throwing him out of the store. Appellant told the police he obtained the rifle from an acquaintance after telling him he was going to shoot a person who disrespected him in front of his girlfriend. They loaded the gun, then appellant returned to the store to kill Mr. Perez. Appellant admitted he shot the telephone then shot Mr. Perez in the stomach. Appellant said he would have shot Mr. Perez more times if Ms. Navarette had not been in the way.

Appellant presented no defense testimony but his counsel cross-examined the prosecution witnesses as to whether appellant had threatened to "get" or "shoot" Mr. Perez as distinguished from "kill" him.

DISCOVERY*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

SUFFICIENCY OF EVIDENCE*

. . . . . . . . . . . . . . . . . . . . . . . . . .

CRUEL OR UNUSUAL PUNISHMENT

The trial court imposed a low term of five years for attempted murder (§§ 187, subd. (a), 664, subd. (a)) plus an enhancement of twenty-five years to life, pursuant to section 12022.53. Section 12022.53, also known as the "10-20-life" law, was enacted in 1997 to substantially increase the penalties for using a firearm in the commission of designated felonies. The Legislature found "that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and deter violent crime." (Stats. 1997, ch. 503, § 1.) Among the designated felonies is appellant's crime, attempted murder. (§ 12022.53, subd. (a)(1) [murder], (a)(18) ["[a]ny attempt to commit a crime listed in this subdivision"].)

The statute provides increasing prison terms (10 years, 20 years, and 25 years to life) for increasingly serious circumstances of firearm use. Under subdivision (b), if the defendant "personally used a firearm" (which can mean merely displaying an unloaded or inoperable firearm, *People* v. *Masbruch* (1996) 13 Cal.4th 1001, 1006-1007 [55 Cal.Rptr.2d 760, 920 P.2d 705]), the mandatory additional consecutive punishment is 10 years. Under subdivision (c), if the defendant "intentionally and personally discharged a firearm," the mandatory additional consecutive punishment is 20 years. Under subdivision (d), applicable to appellant, if the defendant "intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice," the mandatory additional consecutive punishment is 25 years to life. The punishment is not subject to being stricken or reduced in the trial court's discretion. Subdivision (h) provides, "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."

 Appellant contends that section 12022.53, either on its face or as applied to him, constitutes cruel or unusual punishment under either the

---

*See footnote, *ante*, page 489.

United States or California Constitution. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)[4] In *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], a majority of the court held that a state mandatory sentence of life without possibility of parole for possession of substantial amounts of cocaine did not constitute cruel and unusual punishment under the federal Constitution. Two justices were of the view that in cases not involving the death penalty, the Eighth Amendment provides for *no* judicial review whether the length of a legislatively mandated sentence is excessively disproportionate to the crime (*id.* at pp. 962-994 [111 S.Ct. at pp. 2684-2701]); the three concurring justices agreed that the length of a legislatively mandated sentence could be held unconstitutional, but only in cases of "extreme sentences that are 'grossly disproportionate' to the crime.' " (*Id.* at pp. 997-1001 [111 S.Ct. at pp. 2702-2705]; see *People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1193-1195 [2 Cal.Rptr.2d 714] and accompanying footnotes.) ▇ Under the California Constitution, a sentence may be cruel or unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) The main technique of analysis under California law is to consider the nature both of the offense and of the offender. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].) The nature of the offense is viewed both in the abstract and in the totality of circumstances surrounding its actual commission; the nature of the offender focuses on the particular person before the court, the inquiry being whether the punishment is grossly disproportionate to the defendant's individual culpability, as shown by such factors as age, prior criminality, personal characteristics, and state of mind. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479; *People* v. *Weddle, supra,* 1 Cal.App.4th at pp. 1197-1198 & fn. 8.)

The judicial inquiry commences with great deference to the Legislature. Fixing the penalty for crimes is the province of the Legislature, which is in the best position to evaluate the gravity of different crimes and to make judgments among different penological approaches. (*Harmelin* v. *Michigan, supra,* 501 U.S. at p. 998 [111 S.Ct. at p. 2703] (conc. opn. of Kennedy, J.); *People* v. *Dillon, supra,* 34 Cal.3d at p. 477.) Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive. (*People* v. *Weddle, supra,* 1 Cal.App.4th at pp. 1196-1197; *People* v. *Mora* (1995) 39 Cal.App.4th 607, 615-616 [46 Cal.Rptr.2d 99].) This is not such a case.

▇ Appellant, focusing only on subdivision (d), contends "[t]he statute is constitutionally defective because it does not recognize significant gradations of culpability depending on the severity of the current offense, and

---

[4]Appellant moved in the trial court to strike the jury's section 12022.53 finding on the ground that imposing the sentence would be cruel or unusual punishment. The trial court denied the motion.

does not take into consideration mitigating factors." This is not a fair description of the statute. Section 12022.53 as a whole represents a careful gradation by the Legislature of the consequences of gun use in the commission of serious crimes. The section is limited, in the first place, to convictions of certain very serious felonies.[5] The statute then sets forth three gradations of punishment based on increasingly serious types and consequences of firearm use in the commission of the designated felonies: 10 years if the defendant merely used a firearm, 20 years if the defendant personally and intentionally discharged it, and 25 years to life if the defendant's intentional discharge of the firearm proximately caused great bodily injury. Furthermore, the provision in question is an enhancement to the base term for the underlying conviction; a trial court retains flexibility as to fixing the underlying base term for attempted murder. (*People* v. *Valencia* (1989) 207 Cal.App.3d 1042, 1045-1046 [255 Cal.Rptr. 180].) The trial court here exercised that discretion in appellant's favor by selecting the low term of five years due to the absence of a prior criminal record. Thus, contrary to appellant's contention, the statute does recognize different gradations of culpability. (*Harmelin* v. *Michigan, supra,* 501 U.S. at pp. 1007-1008 [111 S.Ct. at pp. 2708-2709] (conc. opn. of Kennedy, J.); *People* v. *Isitt* (1976) 55 Cal.App.3d 23, 29 [127 Cal.Rptr. 279] [life without possibility of parole, for a kidnapping for robbery with bodily harm to the victim, is not cruel or unusual punishment; statute recognized gradations of harm to victim].) Appellant contends that within the confines of subdivision (d), significant variations in the degree of great bodily injury are conceivable, which the statute gives no discretion to consider. This does not render the statute unconstitutionally excessive. Lines must be drawn somewhere, and the Legislature has reasonably drawn the line at great bodily injury. The fact that subdivision (d) leaves no additional room for trial court discretion based on different gradations of great bodily injury does not render the punishment cruel or unusual. (*Harmelin* v. *Michigan, supra,* 501 U.S. at pp. 1007-1008 [111 S.Ct. at p. 2708] (conc. opn. of Kennedy, J.) [it is a penological judgment for the Legislature to determine that trial court discretion should be limited in order to give "clear notice of the severe consequences," as compared to "other sentencing systems in which the sentencer's discretion or the complexity of the scheme obscures the possible sanction for a crime"]; *People* v. *Thomas* (1992) 4 Cal.4th 206 [14 Cal.Rptr.2d 174, 841 P.2d 159] [Legislature may eliminate trial court's discretion under section 1385 to

---

[5]Section 12022.53 applies to convictions of murder, mayhem, kidnapping, robbery, carjacking, assault with intent to commit a felony, assault with a firearm on a peace officer or firefighter, rape, rape or penetration by a foreign object in concert, sodomy, lewd act on a child, oral copulation, penetration by a foreign object, assault by a life prisoner, assault by a prisoner, hostage holding by a prisoner, any felony punishable by death or imprisonment for life, or an attempt to commit any of these crimes other than assault. (§ 12022.53, subd. (a)(1)-(18).)

strike punishments in the interests of justice]; *People* v. *Valencia, supra,* 207 Cal.App.3d 1042, 1045-1046 [same].)

Appellant next addresses the two-pronged test involving the nature of the offense and the nature of the offender. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.) Appellant does not dispute that, in the abstract, attempted murder where the victim suffers great bodily injury is a very serious crime for which severe punishment is warranted. But he argues that in the particular circumstances of this offense, a punishment of 30 years to life is grossly disproportionate to the crime. He contends that the victim "incited" appellant. He characterizes the offense as involving "a love-sick young man, who was obviously blinded by love and its attendant jealousy," who committed the crime in an "unsophisticated" manner after a "frantic" search for "a borrowed rifle." He says appellant exercised "restraint" by not continuing to shoot at the victim. He argues that although the victim "suffered great bodily injury, and underwent several surgeries, he has recovered and is not disabled as a result of his injuries." This is a distorted characterization of the crime which is contradicted by the record. ■ Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment. (*People* v. *Mora, supra,* 39 Cal.App.4th 607, 615-616; cf. *People* v. *Dillon, supra,* 34 Cal.3d at pp. 482, 485-486 [jury and trial judge found facts in favor of the defendant].) ■ The record here warrants the contrary conclusions that the "provocation" was insignificant in comparison to appellant's response, which was vicious and not rash or unsophisticated, and that appellant would have continued shooting if his girlfriend had not been in the way. The victim might easily have been killed, his injuries were extremely serious, and the record is ambiguous as to their lasting effects.

As to the nature of the offender, the probation report shows the following: appellant was born in July 1975, which means he was 23 at the time of the crime (February 1998) and of sentencing. There was no available record of any juvenile offenses. The only adult criminal history was a conviction for driving without a license, for which appellant was sentenced to time served in March 1998. Although appellant told the probation officer he did not intend to kill the victim, the probation officer was unimpressed. She recommended, "The very serious nature of this crime clearly indicates that the defendant has a callous disregard for the safety and well-being of others. . . . [¶] Despite defendant's lack of prior criminal record his behavior in this current offense, in which he seriously injured the victim, and his lack of remorse, must be viewed as extremely violent and dangerous behavior. For the safety of the victim and community members, the defendant should be removed from the community for an extended period of time."

Three family members and a friend, however, told a defense investigator that they had never seen appellant get violent or possess a gun or other weapon.

Although the evidence is uncontradicted that appellant had no significant prior criminal record, this is not determinative. (E.g., *People* v. *Crooks* (1997) 55 Cal.App.4th 797, 807 [64 Cal.Rptr.2d 236].) At age 23 appellant was not a minor, and there was no evidence he was unusually immature emotionally or intellectually as the defendant in *People* v. *Dillon, supra,* 34 Cal.3d at pages 482, 483, 486, and 488. (*People* v. *Young* (1992) 11 Cal.App.4th 1299, 1310 [15 Cal.Rptr.2d 30].)

We conclude the record does not show that the statutory punishment is grossly disproportionate in light of the nature of the offense and the nature of the offender.

Finally, appellant suggests we consider a second technique of analysis, a comparison of the punishment for this offense with the statutory punishment in California for other offenses. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 487, fn. 38.)[6] Appellant contends that if he had committed this offense with a knife, rather than a gun, the enhancements for knife use and inflicting great bodily injury would be only four years (§§ 12022, subd. (b), 12022.7, subd. (a)) rather than 25 years to life. He also notes that the enhancement under section 12022.53, subdivision (d) to his base sentence for attempted murder is, by itself, equivalent to the punishment for a first degree deliberate and premeditated murder committed by means other than a firearm or deadly weapon. (§ 190, subd. (a).) He contends this shows that section 12022.53 is cruel or unusual punishment.

Appellant's analogy is inapt, and his argument is unpersuasive. Sections 12022 and 12022.7 may not be compared to section 12022.53, because they enhance the sentence for "any felony," whereas section 12022.53 is limited to designated felonies of a very serious type. (Fn. 5, *ante.*) More significantly, the Legislature determined in enacting section 12022.53 that the use of firearms in commission of the designated felonies is such a danger that, "substantially longer prison sentences must be imposed . . . in order to protect our citizens and to deter violent crime." The ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means, in order to

---

[6]Appellant does not brief a third technique, comparison of the California punishment with the punishments for the same offense in other jurisdictions. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 487, fn. 38; *People* v. *Weddle, supra,* 1 Cal.App.4th 1190, 1198, fn. 8; *People* v. *Ruiz* (1996) 44 Cal.App.4th 1653, 1665 [52 Cal.Rptr.2d 561].)

deter the use of firearms and save lives. (Note (1998) 29 McGeorge L.Rev. 531, 533-534; *People* v. *Aguilar* (1973) 32 Cal.App.3d 478, 486 [108 Cal.Rptr. 179]; *People* v. *Morgan* (1973) 36 Cal.App.3d 444, 449 [111 Cal.Rptr. 548].) That is this law's purpose. (Stats. 1997, ch. 503, § 1; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 4 (Apr. 8, 1997) p. 2, quoting author ["With the 10-20-life provisions of AB 4, we are sending another clear message: If you use a gun to commit a crime, you're going to jail, and you're staying there."].) The distinction drawn by appellant does not render section 12022.53 cruel or unusual punishment. (*People* v. *Rutkowsky* (1975) 53 Cal.App.3d 1069, 1074-1075 [126 Cal.Rptr. 104].)

DISPOSITION

The judgment is affirmed.

Epstein, J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2000.