Filed 5/26/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H053224 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2408420) |
| v. | |
| ARTHUR MOLINA, | |
| Defendant and Appellant. | |

Defendant Arthur Molina appeals from the trial court's denial of his Penal Code section 290.5[1] petition to terminate his sex offender registration. The trial court denied the petition because Molina's conviction for violating section 288, subdivision (c)(1) (hereafter section 288(c)(1)) requires lifetime sex offender registration. Molina asserts that this lifetime registration requirement violates his right to equal protection under the law, because there is no rational basis for imposing different registration requirements for individuals convicted of violating section 288(c)(1) compared to those convicted of violating section 288, subdivision (a) (hereafter section 288(a)). We reject Molina's equal protection challenge for the reasons explained below, and will affirm the trial court's denial of Molina's petition.

## I. PROCEDURAL BACKGROUND[2]

Molina sustained a felony conviction in 2001 for lewd or lascivious conduct with a child 14 or 15 years old when he was at least 10 years older than the child. (§ 288(c)(1).)

---

[1] Unspecified statutory references are to the Penal Code.
[2] The appellate record contains no information about the underlying facts of Molina's crimes. Therefore, we only include the procedural history of this matter.

Molina also sustained a misdemeanor conviction for contributing to the delinquency of a minor.  (§ 272, subd. (a)(1).)  Molina's section 288(c)(1) conviction required registration as a tier three sex offender, meaning he is subject to registration for life.  (§ 290, subd. (d)(3), (d)(3)(C)(ix).)

In 2022, the trial court reduced Molina's section 288(c)(1) conviction to a misdemeanor under section 17, subdivision (b), which "provides a trial court the authority to declare a wobbler offense—an offense punishable as either a felony or a misdemeanor in the discretion of the court—to be a misdemeanor in certain circumstances, including upon application of the defendant." (*People v. Woodward* (2025) 116 Cal.App.5th 379, 388.)  This reduction did not affect Molina's tier three registration status.

Molina petitioned the trial court under section 290.5 to terminate his sex offender registration.  Molina's form petition acknowledged that he was classified as a tier three registrant but asserted that "this is due to an error in the drafting of the law and we intend to request a hearing and challenge the law as applied to him on equal protection grounds."  The trial court summarily denied the petition, concluding that Molina did not qualify for termination under section 290.5 because he was a tier three lifetime registrant.

Molina then submitted a supplemental brief regarding his petition.  He asserted he had completed educational programs, maintained employment in the accounting field, and started a boat and trailer repair business, and that terminating his registration would allow him to "put his past behind and continue this positive path of growth . . . ."  He acknowledged that his conviction for violating section 288(c)(1) required lifetime sex offender registration, but he contended that this requirement constituted an equal protection violation as applied to him.  The district attorney's office opposed the petition based on Molina's statutory ineligibility for termination of registration, and it argued that the trial court should reject Molina's equal protection claim based on the decision by the Third District Court of Appeal in *Legg v. Department of Justice* (2022) 81 Cal.App.5th

2

504 (*Legg*), which held that lifetime registration for a section 288(c)(1) offense did not violate equal protection guarantees.

At a brief hearing on Molina's petition, Molina's counsel acknowledged the *Legg* decision and stated: "I know we are not allowed to bring an equal protection challenge just based that [section 288(c) offenses] are being treated differently from [section 288(a) offenses]." However, Molina's counsel asserted: "for somebody with a misdemeanor who has been registering for over 20 years, we think that he should be given some sort of opportunity to be able to petition to get off the registry." Molina's counsel pointed to a recent recommendation by the California Sex Offender Management Board (CASOMB) that the Legislature remove section 288(c) from the list of offenses requiring tier three registration, while acknowledging that the report represented recommendations to the Legislature, not "recommendations for a judge to take action."

The trial court denied Molina's petition, stating that while it was "not unsympathetic to the situation," it considered the *Legg* opinion binding. The trial court told Molina: "I feel I am bound by the laws that currently exist, and if that changes, I'd be happy to see you back to be able to make a different ruling should the law allow that."

Molina timely appealed.

## II. DISCUSSION

### A. *Appealability*

Before addressing the merits of Molina's appeal, we determine that the trial court's order denying Molina's petition to terminate registration is appealable. An appellant's opening brief is required to explain why the order appealed from is appealable. (Cal. Rules of Court, rules 8.204(a)(2)(B), 8.360(a).) The statement of appealability in Molina's opening brief does not comply with this requirement, as Molina merely cites rule 8.204(a)(2)(B) (setting forth the requirement for a statement of appealability) and rule 8.304(b)(2) (stating when a certificate of probable cause is not required following a plea of guilty or nolo contendere). However, the Attorney General

3

does not contend that the trial court's order is not appealable, and we conclude that this order is appealable under section 1237, subdivision (b) as an appeal "[f]rom any order made after judgment, affecting the substantial rights of the party." (See *People v. Franco* (2024) 99 Cal.App.5th 184, 192-194 (*Franco*) [reviewing appeal of the denial of a section 290.5 petition and setting forth the standard of review].)

**B.** *Legal Principles and Standard of Review*

**1.** *Sex offender registration requirements*

"The 'Sex Offender Registration Act' (§ 290 et seq. . . . .) was created by the Legislature to serve as a 'comprehensive,' 'standardized, statewide system to identify, assess, monitor and contain known sex offenders for the purpose of reducing the risk of recidivism posed by these offenders, thereby protecting victims and potential victims from future harm.' [Citations.]" (*People v. Eastman* (2018) 26 Cal.App.5th 638, 646.) Before 2021, for those convicted of registerable offenses, "the obligation to register was lifelong." (*People v. Smyth* (2024) 99 Cal.App.5th 22, 26.) "Over time, this one-size-fits-all approach led to California having 'the largest number of registrants in the nation,' 'mak[ing] it difficult for law enforcement to effectively supervise those who present[ed] the greatest public danger.' [Citations.]" (*Franco*, *supra*, 99 Cal.App.5th at p. 190.) Effective January 1, 2021, the Legislature passed Senate Bill No. 384 (2017-2018 Reg. Sess.) "[i]n order to reduce the burden on this overwhelmed system and thereby free up law enforcement to supervise the sex offenders who pose the greatest risk to the community . . . ." (*Franco*, *supra*, at p. 191.) This measure "restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three)." (*People v. Thai* (2023) 90 Cal.App.5th 427, 432.)

Section 290 establishes these three registration tiers. Under section 290, subdivision (b), those who commit registerable offenses are required to remain registered

4

"unless the duty to register is terminated pursuant to Section 290.5 or as otherwise provided by law." Section 290.5 provides procedures for tier one and tier two offenders to seek termination of registration. Tier three registrants are statutorily ineligible to seek termination of registration, with certain exceptions not applicable here. (§ 290.5, subd. (b)(3).)

A violation of section 288(a) occurs when a person "willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." A violation of this statute requires the person to register as a tier two sex offender, meaning the person is subject to registration for a minimum of 20 years. (§§ 290, subd. (d)(2)(A), 667.5, subd. (c)(6), 1192.7, subd. (c)(6).)

Section 288(c)(1)—the offense of which Molina was convicted—addresses the circumstance in which a person commits an act described in section 288(a) with the intent described in that subdivision, "and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child . . . ." A violation of section 288(c)(1) requires lifetime registration as a tier three sex offender. (§ 290, subd. (d)(3), (d)(3)(C)(ix).)

### 2. *Equal protection principles*

We review Molina's equal protection claim de novo. (*People v. Hamilton* (2025) 108 Cal.App.5th 423, 434 (*Hamilton*); *Legg, supra*, 81 Cal.App.5th at p. 509.)

Molina brings his equal protection challenge under both the United States and California Constitutions. Molina contends that the equal protection analysis under either the state or federal Constitution is similar, and although the state equal protection provision is independent of the federal guarantee, we discern no difference in the analysis under the two provisions applicable in this situation. "The federal and state Constitutions' equal protection provisions are similar in scope and effect. They

5

guarantee that persons similarly situated shall be treated equally under the law." (*People v. Alvarez* (2001) 88 Cal.App.4th 1110, 1114, fns. omitted.)

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citations.]" (*People v. Morales* (2016) 63 Cal.4th 399, 408.) However, the California Supreme Court has recently stated that "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question." (*People v. Hardin* (2024) 15 Cal.5th 834, 850 (*Hardin*).) The Supreme Court reached this conclusion because in cases involving challenges to statutes "that facially distinguish between identifiable groups or classes of individuals," "the similarly situated test serves no real purpose." (*Id.* at p. 849.)

At the next step of equal protection analysis, courts have "prescribed different levels of scrutiny depending on whether the law 'targets a suspect class.' [Citation.] 'At a minimum, a statutory classification must be rationally related to a legitimate government purpose. [Citations.]" (*Legg, supra*, 81 Cal.App.5th at p. 511.) "Under rational basis review, even where the state treats two similarly situated groups differently, there is no constitutional violation unless there is not 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] ' "This standard of rationality does not depend upon whether [the] lawmakers ever actually articulated the purpose they sought to achieve." ' [Citation.] In determining if there is a rational basis for the disparity in treatment, ' "a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice," ' and such speculation need not have any empirical basis or foundation in the record. [Citations.] Therefore,

6

'[t]o mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might support the disputed statutory disparity.' [Citations.]" (*Ibid.*)

### C. *Analysis*

Molina asserts that his tier three registration requirement and his resulting ineligibility for termination of registration under section 290.5 violate his right to equal protection under the law as compared to the tier two registration status of those convicted of violating section 288(a). This same constitutional challenge was considered and rejected in *Legg*, *supra*, 81 Cal.App.5th 504. We reach the same conclusion as the Court of Appeal in *Legg*.

The court in *Legg* concluded that individuals convicted of violating section 288(c)(1) are not similarly situated to those convicted of violating section 288(a). (*Legg*, *supra*, 81 Cal.App.5th at p. 514.) However, the California Supreme Court issued its opinion in *Hardin*, *supra*, 15 Cal.5th 834 after *Legg* was decided. We follow our Supreme Court's guidance in *Hardin* by not examining the threshold question of whether the two groups are similarly situated for purposes of the laws in question. (*Hardin*, *supra*, at p. 850.) Instead, we proceed directly to the question of "whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at p. 851.)

Both parties agree that rational basis review applies to this issue. We concur. "Because sex offender registration does not implicate a suspect class or a fundamental right, rational basis review applies here." (*Legg*, *supra*, 81 Cal.App.5th at p. 511; see also *Hamilton*, *supra*, 108 Cal.App.5th at p. 434.)

Applying this standard, we conclude—as the *Legg* court did—that a rational basis exists for the different registration requirements of section 288(c)(1) offenders compared to section 288(a) offenders. To be guilty of violating section 288(c)(1), a person must be at least 24 years of age (the minimum age of 14 for the victim plus an age gap of at least

7

10 years between the offender and the victim). The Legislature rationally could have concluded that adults who are at least 24 years old and who engage in lewd acts with children are less likely to reform and therefore should be subject to lifetime registration. No such age requirement exists for section 288(a) offenders. The Legislature reasonably could have concluded that such younger offenders have "more potential to rehabilitate . . . than their subdivision (c)(1) counterparts" (*Legg*, *supra*, 81 Cal.App.5th at p. 515), and therefore the Legislature could have decided to subject section 288(a) offenders to a more flexible regime that allows for eventual registration termination for these offenders.

As the Attorney General notes, the Legislature created the tiered classification sex offender registration system in the same legislative session that it enacted a measure extending "youth offender" parole hearings from individuals under age 24 to those under age 26, citing research concerning cognitive brain development. (Stats. 2017, ch. 675, § 1; *In re Williams* (2020) 57 Cal.App.5th 427, 432.) The Legislature could have applied the same principle to conclude that section 288(c)(1) offenders may be more cognitively developed and choose to offend anyway, thus demonstrating a greater potential for reoffending.

Molina argues that "some offenders of subdivision (a) could be older than some offenders of subdivision (c)(1)." However, this does not demonstrate an equal protection violation. " '[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citations], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citations]." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887 (*Johnson*).) Section 288(c)(1) requires a minimum 10-year age gap between offender and victim, setting a minimum offender age that

8

section 288(a) does not. This fact demonstrates a rational basis for the different registration requirements for section 288(c)(1) offenders.

The age gap between offender and victim in section 288(c)(1) crimes also may involve concerns of "sexual exploitation of young, vulnerable children by significantly older predatory adults," a concern that "is not always present when a person violates subdivision (a) of section 288, since a violation of that provision can involve consensual sexual relations between minors or teenagers in a romantic relationship." (*Legg, supra,* 81 Cal.App.5th at p. 515; see also *People v. Cavallaro* (2009) 178 Cal.App.4th 103, 114 ["The Legislature could have properly concluded that it was necessary to specifically prohibit sexual conduct between a 14 or 15 year old and an adult at least 10 years older and to include mandatory sex offender registration based upon a conviction for the offense, because of the potential for predatory behavior resulting from the significant age difference between the adult and the minor"].) The 10-year age gap requirement in section 288(c)(1) " 'reflects a recognition that a "sexually naïve" [citation] child of 14 or 15 could fall victim to a more experienced adult, a vice the Legislature was attuned to and took action to prevent.' [Citation.]" (*Legg, supra,* at p. 514.) This concern provides a further rational basis for the challenged disparity.

Molina argues that no rational basis exists for the disparity because the Legislature has characterized section 288(a) offenders as "a greater threat to public safety" than section 288(c)(1) offenders. He notes that section 288(a) is a felony punishable by three six, or eight years in prison, while section 288(c)(1) is a wobbler offense punishable by one, two, or three years. He also notes that section 288(a) is categorized as a "violent felony" under section 667.5, subdivision (c)(6), and as a "serious felony" under section 1192.7, subdivision (c)(6), while section 288(c)(1) is not. We recognize the potential persuasive value of these points from a policy perspective, but they do not meet Molina's burden to show that "no rational basis for the unequal treatment is reasonably conceivable." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

9

Sex offender registration laws are " 'regulatory in nature,' " designed to " ' "assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]" [Citations.]' [Citations.]" (*In re Alva* (2004) 33 Cal.4th 254, 264.) Conversely, the "traditional aims of punishment" are "retribution or deterrence." (*People v. Alford* (2007) 42 Cal.4th 749, 759.) The Legislature could reasonably conclude that the purposes served by sex offender registration laws warrant a lifetime registration requirement for section 288(c)(1) offenders, even though section 288(a) offenders are treated more severely in other ways.

Finally, Molina argues that a 2024 CASOMB report demonstrates a rational basis does not support the different registration requirements for section 288(c)(1) offenders as compared to section 288(a) offenders. An excerpt of this report was attached to Molina's section 290.5 petition to the trial court, and is included in the appellate record. Therefore, we will consider this report excerpt in our rational basis analysis. The excerpt recommends that the Legislature amend section 290 to place individuals convicted under section 288(c)(1) in tier two, stating that the inclusion of section 288(c)(1) offenders in tier three "is not consistent with the current legal continuum for sentencing" and that "some of the offenses that were placed in Tier 3 were not research informed decisions."

However, this does not demonstrate that the inclusion of section 288(c)(1) offenders in tier three lacks a rational basis. The CASOMB's purpose is "to analyze current practices and recommend improvements" in sex offender management. (*People v. Garcia* (2017) 2 Cal.5th 792, 797.) The excerpt of the board's report upon which Molina relies represents an advisory body's recommendation to *improve* sex offender management; it does not demonstrate that the Legislature's previous decision to categorize section 288(c)(1) offenders lacks a rational basis. The Legislature's underlying rationale need not be " 'empirically substantiated,' " and "[i]f a plausible basis

10

exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citations.]" (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

"Rational basis review 'sets a high bar' for litigants challenging legislative enactments. [Citation.]" (*Hardin*, *supra*, 15 Cal.5th at p. 852.) Molina has not met this high bar to show the different registration requirements for section 288(c)(1) offenders versus section 288(a) offenders lack a rational basis.

The trial court indicated it may be disposed to grant Molina's petition if the law allowed this, and the trial court previously reduced Molina's section 288(c)(1) conviction to a misdemeanor under section 17, subdivision (b). If the Legislature adopts the CASOMB's recommendations, Molina could have the opportunity to seek termination of his sex offender registration requirement, at which point evidence of his rehabilitative efforts may be relevant. However, the Legislature has classified Molina as a tier three offender, determining that he is ineligible to have his registration terminated. This decision is supported by a rational basis.

### III. DISPOSITION

The order denying the petition to terminate sex offender registration is affirmed.

_____

Greenwood, P. J.

WE CONCUR:


_____

Danner, J.


_____

Bromberg, J.


H053224 People v. Molina

Trial Court:                              Santa Clara County Superior Court
                                          Superior Court No.: C2408420

Trial Judge:                              The Honorable Eric S. Geffon


Attorneys for Defendant and Appellant
ARTHUR MOLINA:                            Susannah McNamara
                                          under appointment by the Court of
                                          Appeal for Appellant


Attorneys for Plaintiff and Respondent    Rob Bonta,
THE PEOPLE:                                Attorney General of California

                                          Charles C. Ragland,
                                          Chief Assistant Attorney General

                                          Jeffrey M. Laurence,
                                          Senior Assistant Attorney General

                                          Eric D. Share,
                                          Supervising Deputy Attorney
                                          General

                                          Molly A. Smolen,
                                          Deputy Attorney General


H053224 - The People v. Molina