Filed 6/28/24  P. v. Clotfelter CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRUCE LEE CLOTFELTER,<br><br>      Defendant and Appellant. | A168246<br>(Napa County Super. Ct.<br>No. CR182578) |

This matter comes back to us after we reversed and remanded for resentencing in *People v. Clotfelter* (Feb. 7, 2023, A163460, A165951) 2023 WL 1809267 (nonpub opn.) (*Clotfelter III*).  That appeal, in turn, was from two separate judgments of conviction against defendant Bruce Lee Clotfelter arising out of two separate jury trials in Napa County—a perjury, forgery, and identity theft case (*People v. Clotfelter* (Feb. 4, 2021, A155134) 2021 WL 386536 [nonpub opn.] (*Clotfelter I*)) and a felony assault and misdemeanor sexual battery case (*People v. Clotfelter* (2021) 65 Cal.App.5th 30 (*Clotfelter II*)).

After our reversal and remand in *Clotfelter III*, the trial court imposed a sentence of 50 years to life in prison.  In the present appeal, Clotfelter contends this sentence constitutes cruel and/or unusual punishment.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

As we did in *Clotfelter III*, we rely primarily on our prior opinions for factual and procedural background.

*Background*

Long before the events giving rise to his most recent criminal cases, "Clotfelter was convicted in 1989 of three counts of committing lewd or lascivious acts upon a child under the age of 14. ([Pen. Code,[1]] § 288, subd. (a).) He was sentenced to 10 years in state prison and was eventually released in 1995. In 1996, defendant was convicted in federal court of four counts of false impersonation of a military officer, after dressing as a naval fighter pilot and visiting various schools. In 1997, he was adjudicated a sexually violent predator (SVP) and committed to a state hospital for treatment. While in the state hospital, he volunteered to be surgically castrated, a procedure that took place in 2001." In June 2007, defendant was unconditionally released from the state hospital, and subject to lifetime registration as an SVP. Upon his release, defendant moved to Napa County." (*Clotfelter III*, *supra*, 2023 WL 1809267, at *1.)

*Current Offenses*

### Perjury, Forgery, and Identity Theft

"The facts leading to *Clotfelter I* and *Clotfelter II* begin nearly a decade later, when during a routine sex offender compliance check and search of defendant's residence in October 2016, Napa police found a Mexican passport in the name of Bruce Clotfelter, and a U.S. passport in the name of Bruce Vail. Pursuant to a warrant, Napa police seized defendant's computer. The computer contained altered documents defendant had submitted to the Social Security Administration (SSA) and to the Department of State, as well as

---

[1] Further undesignated statutory references are to the Penal Code.

invoices purportedly placing his residence in Napa at the same time he was committed to a state hospital as an SVP. This evidence led defendant to be charged in *Clotfelter I* with numerous felonies including perjury, identity theft and multiple theft counts . . . ." (*Clotfelter III*, *supra*, 2023 WL 1809267, at *1.) The perjury charge arose from an incorrect answer Clotfelter gave in an application he submitted to the DMV for a driver's license under the name Dalton Vail. (*Clotfelter I*, *supra*, 2021 WL 386536, at *2, *16.) The identity theft and forgery charges related to an altered UPS receipt and an altered Grace Church contribution statement, which Clotfelter created in 2010 and submitted as (false) documentary evidence that he had been using the name Dalton Vail for years to support an application for a name change. (*Id*. at *2, *20; *Clotfelter III*, at *7.)[2]

Following a jury trial, Clotfelter was convicted of one count of perjury (§ 118), two counts of identity theft (§ 530, subd. (a)), two counts of document forgery with intent to defraud (§ 470, subd. (d)), and seven counts of grand theft (§ 487, subd. (a)), and the jury also found true allegations that Clotfelter had three prior sex-offense "strike" convictions. In *Clotfelter I*, we reversed the theft convictions; we affirmed the perjury conviction, two forgery convictions, and two identity theft convictions; we directed the trial court to stay the sentences on the two identity theft convictions pursuant to section 654; and we remanded for resentencing and possible retrial on some of the reversed theft counts. (*Clotfelter III*, *supra*, 2023 WL 1809267, at *3.)

---

[2] The theft charges (which were reversed and not retried) arose from allegations that Clotfelter lied to the SSA about his income and received benefit payments he was not eligible for. (*Clotfelter I*, *supra*, 2021 WL 386536, at *3.)

Assault and Misdemeanor Sexual Battery

In addition to evidence of forgery-related crimes, the search of Clotfelter's residence produced evidence showing he "had formed relationships with three minor boys (two were brothers) and their respective families. This evidence led defendant to be charged in a second case . . . with several sexual offenses." (*Clotfelter III*, *supra*, 2023 WL 1809267, at *2.) A jury convicted Clotfelter of all charges, but, in *Clotfelter II*, we reversed the convictions of annoying a child (§ 647.6, subd. (c)(2)) for insufficient evidence and reversed the entire judgment for ineffective assistance of counsel, and we remanded for further proceedings on the remaining counts of contacting or communicating with a 14 or 15-year-old child with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (c)(1)) and contacting or communicating with a child under the age of 14 with the intent to commit a sexual offense (§§ 288.3, subd. (a), 288, subd. (a)). (*Clotfelter II*, *supra*, 65 Cal.App.5th at pp. 37–38, 70.)

*First Resentencing After Remand*

On remand from *Clotfelter I*, the prosecution elected not to re-try Clotfelter on the theft charges (*Clotfelter III*, *supra*, 2023 WL 1809267, at *8), and "the trial court resentenced defendant to a total state prison term of 75 years to life. The court imposed consecutive 25 years to life 'third strike' terms on one count of perjury and two counts of forgery." (*Id.* at *6).

On remand from *Clotfelter II*, Clotfelter entered no contest pleas to one count of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)) and one count of misdemeanor sexual battery (§ 243) (the victims were the two minors Clotfelter had been charged with contacting or communicating with intent to commit a sexual offense), and he was sentenced to four years in prison, to be served concurrently with his sentence

4

in the perjury, forgery, and identity theft case, pursuant to a negotiated disposition. The remaining charges were dismissed. (*Clotfelter III*, *supra*, 2023 WL 1809267, at *6.)

Clotfelter then appealed from the 75-years-to-life sentence. In *Clotfelter III*, we concluded the trial court erred in determining that consecutive sentences on the two forgery convictions were mandatory, and we remanded the matter for resentencing yet again. (*Clotfelter III*, *supra*, 2023 WL 1809267, at *8.)

*Current Proceedings – Sentencing After Remand from* Clotfelter III

On June 6, 2023, Clotfelter filed a sentencing brief and *Romero* motion,[3] arguing it was cruel and unusual punishment under the federal and state constitutions not to dismiss his prior strike convictions. He asserted his current offenses did not involve violence or loss of property and "harmed no one," and he argued his "prior strikes were almost 40 years old"[4] and his history of criminality was "not enough to bring a draconian punishment of a life term."

On June 22, 2023, the prosecution filed a resentencing brief and opposition to the *Romero* motion. The brief noted Clotfelter's criminal history included (1) three convictions of lewd and lascivious conduct upon a child in 1989 for which he was sentenced to 10 years in prison (the three prior strike convictions), (2) four convictions of false impersonation of a military officer in

---

[3] A request that the trial court dismiss a prior strike conviction is commonly referred to as a "*Romero* motion" based on the Supreme Court's recognition in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 506, that section 1385 provides the trial court authority to dismiss prior strike convictions under the Three Strikes law. (*People v. Dain* (2024) 99 Cal.App.5th 399, 409, review granted May 29, 2024, S283924.)

[4] It appears his strike convictions were about 34 years old at the time of resentencing.

1996 resulting in a 14-month prison term, and (3) a conviction for failure to update his sex offender/SVP registration in 2015 for which he received probation for three years and 90 days in jail.

In connection with the prior strike convictions, the prosecution reported that Clotfelter admitted he molested boys over the course of three years while he worked as a church youth leader. He admitted to inappropriately touching five or six boys, who were between nine and 13 years old, and he was convicted of three counts of lewd and lascivious conduct as part of a plea agreement in which two other counts were dismissed. After his release from prison but while he was still on parole for the strike convictions, Clotfelter visited over 20 elementary schools while purporting to be "Commander Talon Fox," a "Top Gun" pilot; he gave talks and signed navy posters for school children—as the prosecution observed, "an obvious way to befriend young boys." (See *Clotfelter II*, *supra*, 65 Cal.App.5th at p. 48 [Clotfelter admitted he posed as a Navy fighter pilot and visited 27 schools in 1994 and 1995].) While on probation for his 2015 conviction (failing to update sex offender registration), Clotfelter was found in violation of probation for possessing weapons. The prosecution further reported that, in December 2016, his probation was modified to include a condition not to associate with children, and Clotfelter violated that condition days later when he "traveled to Southern California to spen[d] time with minor [*sic*]."

Describing the current forgery/identity theft offenses (falsifying a UPS receipt and a church contribution statement), the prosecution noted that Clotfelter lied about the fact that he was residing at Atascadero State Hospital as an SVP, he used the forged documents to successfully apply for a passport under the name "Bruce Dalton Vail" based on false information, and

6

the reason behind the name change "was so that no one would know he was a sex offender."[5]

The prosecution argued the trial court should not dismiss any of the prior strike convictions because Clotfelter "has spent most of his adult life engaging in deception and criminal activity," noting that, since the jury convicted him of the underlying perjury, forgery, and identity theft counts, Clotfelter also has been convicted of assault with force likely to produce great bodily injury and sexual battery upon a child. The prosecution addressed Clotfelter's claim that a three-strike sentence would be cruel and unusual punishment by noting that courts give great deference to the Legislature in fixing penalties for crimes and, " 'Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive,' " quoting *People v. Martinez* (1999) 76 Cal.App.4th 489, 494 (*Martinez*).

At the sentencing hearing, the prosecutor argued against the *Romero* motion, stating, "[I]t might be one thing if these were each old strike priors and Mr. Clotfelter was out and about for the last however many decades leading a law-abiding life, but that could not be further from the truth. Every time he gets out, he violates parole; he violates probation; he re-engages in contact with children; he defrauds the U.S. government, and so on and so forth. [¶] . . . He absolutely falls within the spirit of that law. And the legislature is very clear that despite the nature of his current convictions, he falls within the indeterminate Three Strikes sentencing scheme, and I

---

[5] At the trial on the perjury, forgery, and identity theft charges, a Napa police officer testified that Clotfelter told her that "he was trying to start over and when you googled Bruce Clotfelter, it came up that he was a registered sex offender and he didn't want people to be able to access that information so he had changed his name."

think that is fully warranted given his history of convictions, his history of conduct, his history of violation, his history of fraud, deception and criminal activity."

The trial court denied the *Romero* motion. It found "a continuous pattern of criminality since [Clotfelter] was initially convicted on July 25th, 1989, of three counts of child molestation" and "just numerous and continuous violations in criminality [*sic*], which do not place Mr. Clotfelter outside of the spirit of the Three Strikes Law . . . ." The court noted Clotfelter's current offenses indicated "supreme planning, sophistication or professionalism" and appeared to be part of a "scheme" to avoid the public discovering his status as a registered sex offender. It also took into consideration the circumstance that Clotfelter "has now pled no contest to felony assault . . . as well as sexual battery from dates occurring between October 25th, 2012 and December 31st, 2016 on [minor] Doe [victims], who really fall under a similar pattern of conduct as Mr. Clotfelter's victims in 1989 where Mr. Clotfelter gained access to these children through the church, bought them lavish gifts and ended up traveling to Southern California numerous times . . . ."

The court sentenced Clotfelter to 50 years to life in prison, consisting of an indeterminate term of 25 years to life for the perjury conviction (count 1), a consecutive 25 years to life for one count of forgery (count 5) and a concurrent 25 years to life for the second forgery count (count 6).

## DISCUSSION

Clotfelter's only claim on appeal is that the 50-year-to-life sentence imposed pursuant to the Three Strikes law is cruel and unusual punishment in violation of the federal and state constitutions. Clotfelter argues his

sentence is grossly disproportionate to his crimes and his culpability.  We are not persuaded.

*Federal Constitution*

"The Eighth Amendment [forbidding 'cruel and unusual punishments' (U.S. Const., 8th Amend.)] prohibits 'a sentence that is grossly disproportionate to the severity of the crime.' (*Rummel v. Estelle* (1980) 445 U.S. 263, 271.)  But '[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.' (*Id.* at p. 272.)  'The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.' (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77.)  And while the 'precise contours' of that principle are unclear (*id.* at p. 73), it *is* clear that a state may constitutionally punish a recidivist offender by imposing an extremely long prison sentence— even a life term—and even when the offenses are nonviolent.  (See *Rummel v. Estelle*, at p. 274 [life sentence for fraudulent use of a credit card to obtain $80, forging a check for $28.36, and obtaining $120.75 by false pretenses]; *Ewing v. California* (2003) 538 U.S. 11, 18 [25 years to life for stealing golf clubs]; *Lockyer v. Andrade*, at p. 77 [50 years to life for stealing video tapes].)" (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1172 (*Bernal*).)

Given the United States Supreme Court precedent described in *Bernal*, *supra*, we cannot say Clotfelter's sentence—which the trial court imposed pursuant to the Three Strikes law—violates the federal constitution on grounds of gross disproportionality.  (See also *In re Coley* (2012) 55 Cal.4th 524, 530–531 [holding 25-year-to life sentence for violation of the sex offender registration law was not cruel and unusual punishment because the defendant "was still intentionally unwilling to comply with an important legal obligation, and thus his triggering criminal conduct bore both a rational

9

and substantial relationship to the antirecidivist purposes of the Three Strikes law"].)

*California Constitution*

The California Constitution, which prohibits "[c]ruel or unusual punishment" (Cal. Const., art. I, § 17), likewise "bar[s] the infliction of punishment that is grossly disproportionate to the offender's individual culpability" (*In re Palmer* (2021) 10 Cal.5th 959, 965).

Our high court has emphasized that, to succeed on a claim of cruel or unusual punishment, a defendant "must overcome a 'considerable burden.' " (*In re Palmer, supra,* 10 Cal.5th at p. 972.) "The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. [Citations.] While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively and unmistakably appears.' " (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)

A punishment is not unconstitutional "merely because a judge—trial or appellate—believes there has been a harsh result. A punishment can be declared unconstitutionally disproportionate only after a careful review of both the facts of the case and the applicable appellate precedent." (*People v. Baker* (2018) 20 Cal.App.5th 711, 720.)

Here, as we have previously recounted, the facts of this case are Clotfelter "was originally charged with five counts of child molestation; he admitted three, and the remaining counts were dismissed. Paroled after five years, he violated that parole by impersonating a Navy fighter pilot, which

10

also saw him convicted for a federal crime and incarcerated in a federal facility. In 2015, he was convicted of failure to keep current his sex offender information (§ 290.012), another felony. Defendant makes no genuine effort to establish that the trial court was incorrect in concluding he has displayed 'a continuous history of criminality' since committing the strike offenses."[6] (*Clotfelter I*, *supra*, 2021 WL 386536, at *19.) Since his 2015 conviction, Clotfelter has violated probation by possessing weapons, failed to comply with the probation condition that he not associate with children, and committed felony assault with force likely to cause great bodily injury and misdemeanor sexual battery upon a child. And, while Clotfelter suggests on appeal that his current perjury and forgery offenses were merely nonviolent regulatory offenses that do not indicate a danger to society, the trial court could reasonably conclude that his crimes were, in fact, part of a sophisticated scheme to avoid being identified by the public as a sex offender. (See fn. 5, above.) Indeed, considering the extremely serious nature of Clotfelter's prior strike offenses and his history of using deception to associate with young boys, his current offenses "may properly be viewed as an indicator of potentially significant future dangerousness." (*In re Coley*, *supra*, 55 Cal.4th at p. 562 [refusing to register as a sex offender "may properly be viewed as an indicator of potentially significant future dangerousness" "in

---

[6] In this appeal, Clotfelter acknowledges he "has a significant history of criminality," but argues "his crimes have certainly become far less serious." However, the fact that his most recent criminal convictions are for felony assault and misdemeanor sexual battery upon a child and these crimes are not as serious as lewd and lascivious conduct upon a child is not a reasonable argument against imposing a three-strikes sentence in this case. (Clotfelter does not claim, nor could he, that a three-strikes sentence is unconstitutionally disproportionate whenever the current, triggering offense is not as serious as the prior strike offenses.)

light of the particularly heinous nature of petitioner's prior criminal activity"].)

The applicable appellate precedent shows that "imposition of a life term for even a nonviolent felony committed by a defendant with a history of serious or violent felony convictions does not violate the California Constitution." (*Bernal*, *supra*, 42 Cal.App.5th at p. 1172; see also *People v. Cooper* (1996) 43 Cal.App.4th 815, 825 ["The imposition of a 25-year-to-life term for a recidivist offender, like appellant, convicted of a nonviolent, nonserious felony but with at least two prior convictions for violent or serious felonies is not grossly disproportionate to the crime"].)  In *People v. Mantanez* (2002) 98 Cal.App.4th 354, for example, the Court of Appeal rejected a claim that a 25-year-to-life sentence under the Three Strikes law violated the California Constitution because, the defendant argued, his current offenses of possession of heroin and receiving stolen property were "relatively minor." (*Id*. at pp. 356, 358, 363–364 ["we are not persuaded that it is cruel and unusual punishment to impose a possible life term on a conviction of a nonviolent felony committed by a defendant with a history of serious or violent felony convictions"].)

Thus, after careful review of the facts and applicable precedent, we conclude Clotfelter has not met his burden to show this is one of those "rarest of cases" (*Martinez*, *supra*, 76 Cal.App.4th at p. 494) in which a third-strike sentence violates the California Constitution.

## DISPOSITION

The judgment is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P. J.


_____

Desautels, J.


A168246, *People v. Clotfelter*

13