Filed 9/28/20  P. v. Corsac CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B300660 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA088950) |
| v. | |
| ARTEMIO D. CORSAC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael V. Jesic, Judge.  Affirmed with directions.

Grace White for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Artemio D. Corsac was convicted by jury of four counts of sodomy with a child 10 years old or younger (Pen. Code, § 288.7, subd. (a), counts 1-4),[1] three counts of sodomy by use of force against a victim under the age of 14 (§ 286, subd. (c)(2)(B), counts 5-7), and one count of continuous sexual abuse (§ 288.5, subd. (a), count 8).  He was sentenced to an aggregate term of 133 years to life in prison.

On appeal, defendant contends there is insufficient evidence supporting his convictions, arguing the victim did not describe the acts committed against her at trial, and she recanted her reports of abuse.  He also contends his life sentence is unconstitutionally excessive because he had no prior criminal record.  Lastly, defendant contends evidence of Child Sexual Abuse Accommodation Syndrome was irrelevant and prejudicial, and his trial counsel was ineffective for failing to object to this evidence.  We affirm.

## BACKGROUND

N.H. was born in January 2004.  Defendant dated N.H.'s mother, and is the father of N.H.'s younger half sister.  He lived with N.H.'s family from 2010 until 2017.

While in middle school, N.H. told her friend B.H. that defendant was sexually abusing her.  On April 9, 2017, N.H. texted B.H. that it had happened again.  B.H. told her grandmother, and the two went to the police to report the abuse.

That evening, the police went to N.H.'s home.  When N.H.'s mother heard the police knocking on the door, she walked with N.H. and N.H.'s younger sister out the back of their apartment.  As they were walking from the police, N.H. told her mother that defendant had touched her.

---

[1]     All statutory references are to the Penal Code.

Officer Irina Dankov with the Los Angeles Police Department was one of the officers dispatched to N.H.'s home. She and her partner caught up with mother, N.H., and the younger child as they were walking quickly away from their apartment. Officer Dankov later interviewed N.H., who said defendant had moved in with her family six years earlier, when she was seven years old. As soon as defendant moved in, he began sodomizing her. N.H. told Officer Dankov that defendant put his erect penis in her anus. According to N.H., defendant sodomized her continuously, every four or five weeks, over the six years he lived with her family. One time, he had tried to touch her vagina, but she was able to block him with her hand. Defendant told N.H. he would hurt her if she told anyone about the abuse. N.H. was afraid, but eventually told her friend what was happening.

N.H. told Officer Dankov that defendant had sodomized her earlier that day. That afternoon, when N.H.'s mother went to the market, defendant called N.H. to the bedroom. When N.H. resisted, defendant told her it would be the last time. He grabbed her by the hips, pulled down her pants, and inserted his penis into her anus. After a few minutes, he ejaculated on her back. N.H. went downstairs and texted her friend that it had happened again.

N.H. was taken for a sexual assault exam, and a rape kit was collected. The nurse conducting the exam noted several lacerations to N.H.'s perianal area, the skin surrounding her anus, consistent with something having been pushed inside her anus. Hard stools or extensive wiping could not have caused these injuries. An ultraviolet light showed dried bodily fluid on

N.H.'s left buttock and lower back.  A swab taken from N.H.'s anus matched defendant's DNA.

A video of N.H.'s interview with the sexual assault exam nurse was played for the jury.  N.H. said she was depressed and wanted to go to sleep and never wake up.  She sometimes cut herself with pins.  She felt this way after defendant abused her.  N.H. said the assaults were painful, it hurt to go to the bathroom after defendant abused her, and she saw blood when she wiped.  N.H was scared to resist because defendant often hit her.  She worried about defendant hurting her little sister, but she also worried about her little sister growing up without a father if defendant were to go to jail.

N.H.'s mother did not bring her to court for trial.  The court found she was an unavailable witness, and her preliminary hearing testimony was read to the jury.  At the preliminary hearing, N.H. initially denied that defendant did anything to her and said she had not been honest with the police or the nurse who examined her.  Eventually, N.H. admitted defendant first put his penis in her anus when she was seven, that he had done so every four or five weeks over a six-year period, and that he had done so on April 9, 2017.

N.H. later appeared and testified at trial.  She was generally uncooperative and said she had already "told you guys" everything, and she did not want to repeat herself.  She admitted that she "mostly blocked everything out," and that made her feel better.  She had not been honest with the police or the nurse who examined her, but she did admit to making many of the statements attributed to her.

Dr. Susan Hardie testified as a child sexual abuse expert. She explained the characteristics of Child Sexual Abuse

Accommodation Syndrome (CSAAS). She testified it is a model to explain a child's behavior following sexual abuse, though it does not predict or prove that a child has been sexually abused. She testified that children often delay reporting sexual abuse until they are older. Also, because the abuse happens in secret, children often will experience shame, fear, or the belief that they have done something wrong. Abused children may make inconsistent statements, or recant earlier accusations.

Elizabeth Pizarro testified for the defense. She was a family friend and babysitter, and she was living with N.H.'s family on April 9, 2017. Ms. Pizarro testified she was with N.H. at the time the alleged assault occurred, and N.H. was never out of sight. N.H. never told Ms. Pizarro that defendant did anything sexual with her. Ms. Pizarro admitted on cross-examination that she may have been confused about what happened on April 9, and that she possibly left for work before N.H.'s mother returned from the store that day.

Lucia Cotiy lived with N.H.'s family between 2012 and 2016. Defendant was rarely home. He left early in the morning and came home late at night. She never witnessed any inappropriate contact between defendant and N.H.

Defendant testified he worked a lot and was rarely at home. He fathered a child with N.H.'s mother, but he was also seeing another woman. N.H.'s mother tried to extort money from him, telling defendant she would "tell the truth" in exchange for $20,000. He refused to pay her because he believed in "justice."

Defendant spent the night at his girlfriend's house on April 8, 2017. The next morning, N.H.'s mother repeatedly called defendant, telling him their daughter was sick. Once he arrived

at N.H.'s home, mother seduced him and they had sex. Defendant denied ever doing anything "inappropriate" with N.H.

## DISCUSSION

**1.    Sufficiency of the Evidence**

Defendant contends the evidence is insufficient to support his conviction because N.H. did not testify to the kinds of acts committed against her, when they occurred, or how often they occurred, and she recanted her disclosures to police and the sexual assault nurse.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  In conducting this review, the appellate court has no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In *People v. Jones* (1990) 51 Cal.3d 294, the court addressed the sufficiency of sexual abuse testimony.  (*Id*. at p. 315.)  "The victim . . . must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy).  Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping').  Finally, the victim must be able to describe the general time period in which

6

these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period.  Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id.* at p. 316, italics omitted.)

The evidence here meets these standards.  N.H. told the police and the sexual assault nurse that defendant put his penis in her anus when she was seven, he continued to do so every four or five weeks over the following six-year period, and he did so on April 9, 2017.  She also told B.H. that defendant had been abusing her.  Officer Dankov testified to these facts, and they were corroborated by N.H. in the recording of her interview with the sexual assault nurse.  N.H.'s physical examination revealed injuries consistent with sexual abuse, and semen matching defendant's DNA was found in N.H.'s anus.  Defendant is asking us to reweigh the evidence and resolve conflicts in his favor.  This we cannot do.

## 2.    Cruel and Unusual Punishment

Defendant contends his indeterminate sentence constitutes cruel or unusual punishment under California's Constitution.  Defendant has forfeited this claim of error by failing to object below.  (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247.)

In any event, the claim fails on its merits.  Section 288.7, subdivision (a) mandates a sentence of 25 years to life for the crime of sexual intercourse or sodomy with a child who is under 10 years of age.  "A punishment is cruel or unusual in violation of the California Constitution 'if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is

7

inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*), quoting *In re Lynch* (1972) 8 Cal.3d 410, 424.)  Whether a sentence constitutes cruel and unusual punishment is a question of law we review de novo. (*Baker*, at p. 722.)

The state constitutional analysis requires a three-pronged approach, under which a court (1) evaluates "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society," (2) "compare[s] the challenged penalty with punishments prescribed for more serious crimes in [its] jurisdiction," and (3) "compar[es] the challenged penalty with the punishments prescribed for the same offense in other jurisdictions." (*In re Lynch*, *supra*, 8 Cal.3d at pp. 425-427, italics omitted.)  "The weight afforded to each prong may vary by case," and " '[d]isproportionality need not be established in all three areas.' " (*Baker*, *supra*, 20 Cal.App.5th at p. 723.)

Here, defendant argues he has no prior criminal history, and asserts N.H. suffered no physical harm.  He does not discuss the other *In re Lynch* factors.  Defendant attempts to cure this deficiency in his reply brief, but we do not consider arguments raised for the first time on reply.  (*People v. Mitchell* (1995) 36 Cal.App.4th 672, 674, fn. 1.)

We have considered all the *In re Lynch* factors as applied to the facts of this case and conclude defendant's punishment is not cruel or unusual.  Section 288.7's punishment is commensurate with how similar crimes are punished elsewhere, and how other severe sex crimes are punished in this state.  (See, e.g., *Baker*, *supra*, 20 Cal.App.5th at pp. 730-732.)

Defendant's conduct was especially heinous. Defendant tortuously sexually assaulted, hit, and emotionally terrorized his girlfriend's young daughter for many years, threatening her if she disclosed his abuse. N.H. was gravely harmed, both physically and emotionally. The Legislature expressly contemplated the imposition of life sentences for particularly heinous sex crimes on children, such as the crimes in this case. (*Baker*, *supra*, 20 Cal.App.5th at p. 729.) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.) We find no reason to do so here.

### 3. Expert Testimony

Defendant contends the expert testimony about CSAAS was irrelevant and prejudicial. He says the jury should have been instructed " 'that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true.' " In fact, the jury was instructed on this point, as described below. Defendant acknowledges his counsel did not object to the CSAAS evidence below and contends counsel was ineffective for failing to do so.

We find no merit to these contentions. To establish ineffective assistance of counsel, defendant must show both deficient performance and prejudice. (*People v. Hart* (1999) 20 Cal.4th 546, 623.) " 'To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . ." ' " (*Id.* at pp. 623-624.) Any objection to the expert testimony in this case would have been overruled as meritless.

9

Expert testimony about CSAAS is routinely offered in cases such as this one, where a young sexual abuse victim recants her testimony at trial. One of defendant's theories at trial was that N.H. had lied about the abuse, as evidenced by her later recanting her reports. CSAAS evidence may not be introduced to prove that a victim was abused, but for decades it has been properly admitted in child sexual abuse trials "to rehabilitate [a] witness's credibility when the defendant suggests that the child's conduct after the incident . . . is inconsistent with his or her testimony claiming molestation. [Citations.]" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300; *id.* at p. 1301[" 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. [¶] The great majority of courts approve such expert rebuttal testimony."].)

Moreover, the jury was instructed with CALCRIM No. 1193, which told the jury the expert's testimony "is not evidence that the defendant committed any of the crimes charged against him." CALCRIM No. 1193 instructed the jury that it could consider the expert's testimony on CSAAS "only in deciding whether or not [N.H.'s] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of [her] testimony." We presume the jury followed the court's instructions. (*People v. Wilson* (2008) 44 Cal.4th 758, 834.)

The jury was also instructed with CALCRIM No. 332, explaining how a jury should view expert witness testimony. No further limiting instruction on the use of CSAAS expert

testimony was required.  (See, e.g., *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1072.)

The instructions mirrored the expert's testimony that CSAAS is a model that may explain a child's behavior but is not evidence that a child was molested.

On this record, defendant cannot demonstrate prejudice. The evidence here was overwhelming, and any error was harmless under any standard of review.  (*People v. Watson* (1956) 46 Cal.2d 818, 835-837; *Chapman v. California* (1967) 386 U.S. 18, 24.)

## 4. Abstract of Judgment

Respondent notes the abstract of judgment incorrectly reflects that defendant's sentences on counts 1 through 4 are to be served concurrently, when the court ordered them to run consecutively.  The abstract of judgment must be corrected to accurately state the sentence imposed by the court.

## DISPOSITION

The judgment is affirmed.  The superior court is directed to amend the abstract of judgment to reflect that defendant's sentences on counts 1 through 4 are to be served consecutively, and to send a certified copy to the Department of Corrections and Rehabilitation.


GRIMES, J.


WE CONCUR:

BIGELOW, P. J.



STRATTON, J.


11