Filed 9/30/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082304 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD292469) |
| AUSTIN EUGENE ELLIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge. Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Donald W. Ostertag, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Austin Eugene Ellis of thirteen counts of sexual offenses—including nine counts of lewd acts (Pen. Code, § 288, subd. (a))—committed upon two of his stepdaughters, L.C. and M.C., when they were less

than ten years old.  For each of the lewd act counts, the jury also found true that Ellis committed the offense against more than one victim under California's "One Strike" law.  (§ 667.61, subds. (c)(4) & (e)(4).)  The court sentenced him to an indeterminate prison term of 145 years to life.  Ellis raises two issues on appeal.

First, relying on *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), Ellis claims the court prejudicially erred in failing to engage in an Evidence Code section 352 balancing analysis before instructing the jury that it could consider as evidence of Ellis' propensity to commit sexual offenses (1) Ellis' uncharged sexual offenses against L.C. postdating the charged offenses and (2) the charged offenses themselves.  (See CALCRIM Nos. 1191A [uncharged offenses] & 1191B [charged offenses].)

We disagree.  Ellis does not dispute the trial court analyzed the uncharged acts under section 352 before finding them admissible at a pretrial hearing, and we infer from the record that the trial court engaged in this analysis for the charged acts as well.  The record also discloses that the court considered the propriety of CALCRIM Nos. 1191A and 1191B after the parties rested their cases and before instructing the jury.

Second, Ellis argues his sentence violates the federal and California Constitutions' (1) guarantee of equal protection (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) and (2) prohibition against cruel and/or unusual punishment (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17).  Because he was sentenced under the One Strike law, Ellis is ineligible for a youthful offender parole hearing.  (Pen. Code, § 3051, subd. (h).)  He contends there can be no rational basis for the Legislature to declare young adults convicted of lewd act offenses against multiple victims, like him, to be categorically ineligible for parole while providing the opportunity for a

youthful offender parole hearing to young adults convicted of "more serious" offenses with longer unenhanced sentences—like murder (§ 187) and sexual intercourse, sodomy, oral copulation, or sexual penetration of a child ten years of age or younger (§ 288.7)—and habitual sexual offenders (§ 667.71).  He also argues that sentencing youthful adult offenders to "de facto" sentences of life without the opportunity for parole (LWOP) is unconstitutional given their capacity to change as they mature.

Our high court recently affirmed the constitutionality of section 3051, subdivision (h)'s exclusion of One Strike offenders from youthful offender parole consideration as compared to non-special-circumstances murderers and habitual sexual offenders.  (*People v. Williams* (2024) 17 Cal.5th 99 (*Williams*).)  Applying its reasoning, we deny Ellis' equal protection claim. We also conclude he forfeited his claim that LWOP is constitutionally cruel and/or unusual punishment for youthful adults by failing to object on that basis below.  The claim fails on the merits regardless.

Accordingly, we affirm.

BACKGROUND

I.

In September 2005, when Ellis was 22 years old, he moved to San Diego with his wife D.E. and three stepdaughters: (1) L.C., then four years old; (2) T.C., then three years old; and (3) M.C., then one year old.  In June 2008, the family moved to Indiana.  At the time, the girls were seven, five, and four years old, respectively.

When L.C. was 12, she disclosed to D.E. that Ellis had been sexually abusing her since the family moved to San Diego.  Later, M.C. also disclosed Ellis' sexual abuse to D.E.  In 2021, L.C. and M.C. reported the sexual abuse to the San Diego Police Department.

3

The People's amended information charged Ellis with one count of sexual intercourse with L.C. while ten or younger (Pen. Code, § 288.7, subd. (a); count 1), two counts of oral copulation with L.C. while ten or younger (§ 288.7, subd. (b); counts 2 & 3), seven counts of lewd acts upon L.C. while under the age of fourteen (§ 288, subd. (a); counts 4-10), one count of oral copulation with M.C. while ten or younger (§ 288.7, subd. (b); count 11), and two counts of lewd acts upon M.C. while under the age of fourteen (§ 288, subd. (a); counts 12-13). As to each of the lewd act counts, the People alleged Ellis committed the offense against more than one victim under the One Strike law. (§ 667.61, subds. (c)(4) & (e)(4).)

II.

L.C., M.C., and Ellis testified at trial.

According to L.C., during the time the family lived in San Diego, Ellis repeatedly touched her vagina and bottom over her underwear in a sexual manner, orally copulated her once, "raped [her] several times," and weekly made L.C. orally copulate him. Once they moved to Indiana, Ellis continued to touch her vagina and bottom over her underwear and also rubbed his penis against her teeth and gums while she slept in bed. The People charged Ellis only for the California acts.

M.C. testified that Ellis forced her to orally copulate him at least twice while living in San Diego.

Ellis denied all charged and uncharged acts.

III.

The jury found Ellis guilty of all counts. It also found the One Strike allegation true for all nine lewd act counts.

4

The trial court sentenced Ellis under the One Strike law to an indeterminate prison term of 145 years to life, making him ineligible for a youthful offender parole hearing. (Pen. Code, § 3051, subd. (h).)

## DISCUSSION

### I.

First, Ellis argues his convictions must be reversed because the trial court failed to engage in a separate Evidence Code section 352-type analysis of the propensity instructions after the close of evidence and before instructing the jury. He argues the court's "evidentiary error" in failing to conduct this analysis before instructing the jury was an abuse of discretion that deprived him of a fair trial. He also claims it was "instructional error." We disagree.

### A.

Generally, "evidence of a person's character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) But if a defendant is charged with a sexual offense, "evidence of the defendant's commission of another sexual offense . . . is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) Section 352 vests the court with discretion to "exclude evidence if its probative value is substantially outweighed by" the possibility of "undue consumption of time," "undue prejudice," confusion of the issues, or misleading the jury. (§ 352.)

### B.

Before trial, the People moved in limine to admit evidence of the uncharged Indiana sexual offenses under section 1108. They also moved to admit the charged offenses as propensity evidence as to each other. Relatedly, the People proposed the court instruct the jury on CALCRIM

5

Nos. 1191A—concerning uncharged acts—and 1191B—concerning charged acts. Ellis objected to the constitutionality of both instructions. He also moved in limine to exclude the uncharged acts propensity evidence, relying on section 352.

After argument, the trial court granted the People's motion, finding the evidence of the uncharged offenses "particularly probative" and "not substantially outweighed" by section 352 considerations. The court notified Ellis that, "should we reach that point where we are addressing jury instructions, it is my inclination to give the jury" CALCRIM Nos. 1191A and 1191B, as the charged and uncharged acts were cross-admissible "as between counts and alleged victims."

After both parties rested, the court again solicited their positions on CALCRIM No. 1191A. As the trial court had admitted the evidence over his objection, Ellis' counsel said he "pretty much need[ed] to agree to" giving it, but he reiterated his view that it violated due process. The court concluded "[t]here does appear to be substantial evidence to support" the instruction, so it would give the instruction over the defense's objection.

Ellis' counsel also argued CALCRIM No. 1191B was unconstitutional. But the court again found "substantial evidence to support" giving the instruction over the defense's objection.

C.

Ellis relies on our high court's decision in *Villatoro*—and particularly the two concurring and dissenting opinions' interpretation of the majority's ruling—to advance his claim of error.

In *Villatoro*, the defendant was charged with raping multiple women over several years. (*Villatoro*, *supra*, 54 Cal.4th at p. 1156.) At the time, the sole model jury instruction on section 1108 propensity evidence, CALCRIM

No. 1191, referred only to "uncharged offenses."[1] (*Id.* at pp. 1167-1168.) Yet the trial court instructed the jury with a modified version of the instruction—similar to today's CALCRIM No. 1191B—allowing it "to use evidence of [the] defendant's guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses." (*Id.* at p. 1158.)

A majority of the Supreme Court rejected the defendant's claim that the trial court erred by not undertaking a section 352-type analysis "before giving the modified instruction." (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.) Noting the Court of Appeal's observation that an express statement is not required, the *Villatoro* court concluded, based on the record, that "the trial court implicitly conducted a section 352 analysis." (*Ibid.*)

Justice Corrigan's separate opinion concluded the Legislature never intended section 1108—a statute governing evidence's admissibility—to cover charged offenses, and "[c]onducting a section 352 analysis to decide whether to give a jury instruction is unprecedented." (*Villatoro*, *supra*, 54 Cal.4th at p. 1177.) Extending the propensity inference to charged offenses "sanctions a bootstrapping of verdicts we have long considered improper." (*Id.* at p. 1179.) Justice Liu's separate opinion agreed. (*Id.* at p. 1182.)

In Ellis' view, Justices Corrigan and Liu's separate opinions "correctly understood the majority to be requiring a trial judge to engage in a section 352 analysis, sua sponte, before deciding whether to instruct with CALCRIM No. 1191B." He argues such analysis is required here, "even though the trial court had earlier conducted a section 352 analysis before admitting the evidence as cross-admissible."

---

[1]     In March 2017, CALCRIM No. 1191 was split into two instructions: 1191A and 1191B. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 496, fn. 1.)

D.

We agree with the People that "[i]f a trial court has already explicitly or implicitly engaged in a section 352 analysis in determining the admissibility or cross-admissibility of the section 1108 evidence, nothing in *Villatoro* indicates that the trial court must conduct that analysis yet again before giving" CALCRIM Nos. 1191A and 1191B. Indeed, our high court endorsed this very interpretation of *Villatoro* in *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790 (*Daveggio*).

In *Daveggio*, two defendants were charged with three counts of oral copulation stemming from two sexual assaults of women. (*Daveggio*, *supra*, 4 Cal.5th at pp. 800, 806-811.) Under section 1108, the court admitted evidence of four uncharged sexual assaults but excluded evidence of eleven others under section 352. (*Id.* at p. 821.) The defendants were also charged with one count of murder. (*Id.* at p. 800.) The trial court denied a motion to bifurcate trial on the murder charge from trial on the other charges due to the cross-admissibility of the evidence of all charged counts and because "'none of the counts is noticeably more inflammatory.'" (*Id.* at p. 829.)

The Supreme Court concluded the trial court exercised its discretion under section 352 before instructing the jury on the section 1108 charged acts propensity inference when it ruled on the pretrial motion to bifurcate. (*Daveggio*, *supra*, 4 Cal.5th at pp. 828-830.) It rejected the argument "that the trial court's ruling on the motion to bifurcate cannot be regarded as an exercise of section 352 discretion because the ruling was made before trial, while section 352 review 'typically occurs during trial in the context of evidence already before the jury.'" (*Id.* at p. 829.) The court perceived "no persuasive reason to disregard the trial court's section 352 analysis simply because it was conducted before trial," particularly as the defendants did not

8

identify any "change occurring at trial that . . . could or would have altered the trial court's section 352 analysis." (*Id.* at pp. 829-830.)

The same is true here. The trial court engaged in a section 352 analysis of the uncharged offenses as propensity evidence pretrial, finding the evidence "particularly probative" and "not substantially outweighed by . . . undue prejudice," "undue consumption of time," "confusi[on of] the issues," or the potential to mislead the jury. The prosecution argued the charged crimes were "cross-admissible . . . for the same reasons" as the uncharged acts. The court agreed, impliedly finding section 352 satisfied as to the charged offenses as well. (See *People v. Sommer* (2021) 61 Cal.App.5th 696 [finding implicit section 352 analysis of charged acts based on express section 352 analysis of uncharged acts].) Thus, as in *Daveggio*, the court engaged in the requisite section 352 analysis. And, as in *Daveggio*, Ellis does not claim (1) any developments during trial altered that analysis or (2) the instructions were improper for any other reasons. We thus perceive no error under *Daveggio*'s reasoning, which binds this court. Because this court must follow *Villatoro* and *Daveggio*, to the extent Ellis urges *Villatoro* was "incorrectly decided" and "should be overturned," this court cannot provide the relief he requests.

To the extent Ellis relies on Justices Corrigan and Liu's separate opinions in *Villatoro* to argue the court had to conduct a second section 352 analysis when discussing jury instructions, they "are not binding precedent." (*People v. Lopez* (2012) 55 Cal.4th 569, 585.) Besides—as Ellis himself points out—while finalizing the jury instructions, the court concluded it would give CALCRIM Nos. 1191A and 1191B over Ellis' objection because there was "substantial evidence to support" each instruction. We believe these statements show the court's reaffirmance that instruction on propensity was

appropriate—thus impliedly finding a propensity inference based on the charged acts was not unduly prejudicial.  Accordingly, we perceive no error.  Given our conclusion, we need not reach the People's alternative argument that Ellis forfeited his claim or the issue of prejudice.

## II.

Second, Ellis contends Penal Code section 3051—which excludes young adult One Strike offenders from future youthful offender parole consideration—unconstitutionally (1) violates equal protection and (2) constitutes cruel and/or unusual punishment.  We conclude otherwise.

## A.

In asserting his equal protection claim, Ellis argues there is no rational basis to deny parole eligibility to youthful One Strike offenders like him while retaining parole eligibility for youthful offenders (1) convicted of "far more serious sex offenses"—"namely[,] section 288.7 offenses"; (2) sentenced under the "Two Strikes" law governing "habitual" sexual offenders; and (3) convicted of non-special-circumstances murder.

### 1.

"At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification."  (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*).)  We apply the rational basis test to claims alleging section 3051 treats disparately different groups of youthful offenders.  (*Williams, supra*, 17 Cal.5th at pp. 123-124.)

Rational basis review "sets a high bar."  (*Chatman, supra*, 4 Cal.5th at p. 289.)  "A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable."  (*Ibid*.)  The Legislature need not have relied on the

10

rationale nor even expressed it. (*Ibid.*) "In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." (*Federal Communications Commission v. Beach Communications* (1993) 508 U.S. 307, 315.) The logic underlying the justification need not "be persuasive or sensible" but "simply rational." (*Chatman*, at p. 289.) Thus, the statute must be upheld if any plausible justification exists. (*Ibid.*)

2.

Our high court recently affirmed, on equal protection grounds, the constitutionality of section 3051's treatment of youthful One Strike offenders as compared to two of the categories of youthful offenders Ellis challenges: (1) non-special-circumstances murderers and (2) habitual sexual offenders. (*Williams*, *supra*, 17 Cal.5th at pp. 133, 135-136.)

In *Williams*, the court first recounted the purposes underlying the One Strike law and its amendments, including imposing longer sentences on (1) sexual offenders whose acts place their victims in especially vulnerable situations and (2) first-time sexual offenders whose crimes were committed under aggravated circumstances. (*Williams*, *supra*, 17 Cal.5th at pp. 117-118.) Various voter initiatives and legislative amendments reaffirmed these concerns while also expressing unease about the high recidivism rates of and the questionable ability to rehabilitate certain sexual offenders, including One Strike offenders. (*Id.* at pp. 119-120.)

Given these concerns, the court found a rational basis for treating One Strike offenders differently than non-special-circumstances murderers. Although the legislative history of section 3051 does not explain its exclusion of One Strike offenders, the court noted these offenders not only posed an "increased risk of recidivism," but also their offenses were "aggravated [in

11

their] nature." (*Williams, supra*, 17 Cal.5th at pp. 127-128.) Because the Legislature excluded One Strike offenses from section 3051 parole eligibility, it presumptively knew of the legislative history underlying, and the case law interpreting, that law. (*Id.* at pp. 128-129.) The exclusion thus "reflects a legislative judgment that extending the possibility of early release to young adult One Strike offenders would be neither productive nor appropriate." (*Id.* at p. 130.) While a generalization, such a conclusion is permissible and rational. (*Ibid.*) As the defendant failed to point to any evidence that (1) similar recidivism concerns applied to murderers or (2) "murder necessarily includes aggravating factors," the different treatment must be upheld. (*Ibid.*) The court found Eighth-Amendment precedents addressing the relative severity of murder as compared to other offenses "inapt" to conducting this analysis. (*Id.* at pp. 130-133.)

The court also concluded a rational basis existed for section 3051 to treat One Strike offenders differently than habitual sexual offenders. While habitual offenders "are by definition recidivists," the *sole* purpose of the habitual sexual offender statute was to address recidivism. (*Williams, supra*, 17 Cal.5th at pp. 133-134.) The One Strike law, on the other hand, was motivated by concerns of both recidivism *and* "the aggravated circumstances of the underlying crime or crimes, the number and nature of which determine" sentence length. (*Id.* at p. 134.) "This difference in purpose" justifies different treatment. (*Ibid.*)

To the extent the defendant argued any justification based in recidivism was arbitrary in excluding One Strike offenders and not other sexual offenders, the court acknowledged "the continuing academic and scientific debate on the issue." (*Williams, supra*, 17 Cal.5th at p. 134.) It concluded, however, that at least one study provided "an empirical basis to

12

support the Legislature's recidivism concerns." (*Id.* at pp. 134-135.) Further, "the Legislature may institute reform in an area of law in an 'incremental and uneven manner.'" (*Id.* at p. 135, quoting *People v. Barrett* (2012) 54 Cal.4th 1081, 1110.) "[T]he Legislature could have rationally concluded . . . One Strike offenders posed an identified recidivism risk of committing *aggravated* sex offenses and that allowing these offenders who would likely reoffend to seek early parole would be inconsistent with the rehabilitative goal of section 3051." (*Williams, supra,* 17 Cal.5th at p. 135, italics added.)

3.

Following *Williams*, we requested supplemental briefing from the parties. Ellis' brief wisely does not reargue that section 3051's disparate treatment of One Strike offenders compared to non-special-circumstances murderers or habitual sexual offenders is unconstitutional. We agree with the People that *Williams* foreclosed those claims.

Ellis, however, claims *Williams* supports his alternative argument that "there can be no rational basis for according section 288.7 sexual offenders (who sexually violate children under the age of 10) the benefit of section 3051 while at the same time expressly excluding section 288 offenders (who commit less serious acts of lewd conduct on children under the age of 14)." In his view, recidivism "is arguably far more applicable to section 288.7 offenders." Ellis also claims "it is indisputable that the aggravating factors found in [the One Strike law] also apply to section 288.7 offenses with equal, if not greater, force."

Ellis' argument misses the point in several ways. First, section 3051 does not "exclude section 288 offenders" from parole consideration. Rather, it excludes only those section 288 offenders who are sentenced under the One Strike law because—in addition to the base offense—a factfinder found

13

true beyond a reasonable doubt that one or more aggravating circumstances applied to the way the offender committed the lewd act. An unaggravated section 288 offense is punishable by at most eight years in prison (Pen. Code, § 288, subd. (a)), while a lewd act subject to the One Strike law is punishable by a term of 15 or 25 years to life (§ 667.61). Thus, Ellis' fixation on the relative "serious[ness]" of section 288 and 288.7 offenses is misplaced.

Notably, section 288.7 already imposes a lengthy term *without* the aggravating circumstances of the One Strike law, which also rationalizes the different treatment. It was enacted precisely to "define[ ] a new crime[ ] with a prison term of 25 years to life." (Sen. Comm. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006.) Before section 288.7, imposing a life sentence for sexual intercourse or sodomy with a child under ten required charging the offense as a lewd act under section 288 with one or more aggravating One Strike factors. (*Ibid*.) The new crime, however, was designed so a life term would apply automatically upon conviction, obviating the need to charge and prove any One Strike factors. (*Ibid*.) Thus, as the People note, section 288.7 offenses "may not involve the aggravating circumstances targeted by the One Strike law"— indeed, section 288.7 was expressly designed so such offenses would *not* necessarily include One Strike factors. It therefore is not, as Ellis claims, "indisputable" such circumstances "also apply to section 288.7 offenses." The categorically enhanced punishment for section 288.7 offenses as opposed to that for section 288 offenses recognizes the relative seriousness of those offenses. But it is the aggravated circumstances set forth in the One Strike law that set acts punished under that scheme apart from more "serious" offenses with categorically long sentences, like those under section 288.7. As in *Williams*, "the Legislature could have rationally concluded . . . One Strike

14

offenders posed an identified recidivism risk of committing *aggravated* sex offenses and that allowing these offenders who would likely reoffend to seek early parole would be inconsistent with the rehabilitative goal of section 3051." (*Williams*, *supra*, 17 Cal.5th at p. 135, italics added.)

Second, the Legislature could rationally find the recidivism concerns greater for youthful One Strike offenders than for youthful section 288.7 offenders. Just as one could "arguably" claim the recidivism concerns are greater for section 288.7 offenders—as Ellis does—one could claim the opposite. The legislative history of section 288.7 summarized various recidivism studies with mixed findings, but one notably found "recidivism of sex offenders declined with age, 'but the overall effect was not large,'" yet "[r]ecidivism for rapists declined with age more steeply than with child molesters." (Sen. Comm. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006.) That empirical evidence— even in the face of "conflicting or ambiguous evidence" to the contrary—is a rational basis for the Legislature to have decided it was unnecessary to exempt section 288.7 offenders from section 3051 parole eligibility while confirming the need to continue to exempt One Strike offenders. (*Williams*, *supra*, 17 Cal.5th at pp. 134-135.)

As the justifications for the two statutes are different, the Legislature could rationally find it appropriate to treat the two sets of offenders differently. The Legislature could rationally conclude that the necessarily aggravated circumstances under which One Strike offenses are committed justify different treatment than the serious, but not necessarily aggravated, circumstances under which section 288.7 offenses are committed. It could also conclude heightened recidivism concerns merited different treatment. While these are potentially over- or underinclusive generalizations, the

15

differentiation is not irrational. (*Williams*, *supra*, 17 Cal.5th at p. 130.) Further, the Legislature may implement reforms piecemeal. (*Id.* at p. 135.) Given the justifications underlying the One Strike law, the Legislature could rationally have decided those concerns were more pressing than those underlying section 288.7 and therefore opted to exclude only the one class of offenders from youthful offender parole consideration. (*Ibid.*)

Because a rational basis exists for treating young adult One Strike offenders differently than young adult offenders of section 288.7 for purposes of section 3051 parole eligibility, Ellis' equal protection challenge fails.

B.

Ellis additionally claims imposing a de facto LWOP sentence on a young adult offender like him is unconstitutional. In California, a punishment can be unconstitutional "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) "Only in the rarest of cases" should a court declare unconstitutionally lengthy a sentence "mandated by the Legislature." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.)

The People argue Ellis forfeited this claim by failing to raise it below. (Citing *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1248 [collecting cases].) Ellis conspicuously does not address this argument. Given the weight of authority on the issue, we agree with the People.

Besides, the claim fails on the merits. While a young adult, Ellis was nonetheless an adult when he committed his crimes. And appellate courts have consistently concluded a de facto LWOP sentence imposed on a young adult offender is neither cruel nor unusual. (See *People v. Montelongo* (2020)

16

55 Cal.App.5th 1016, 1030-1031 [collecting cases], republished at

274 Cal.Rptr.3d 267 when pet. den.)

Accordingly, we conclude Ellis is also not entitled to relief on this basis.

DISPOSITION

We affirm.

CASTILLO, J.

WE CONCUR:


BUCHANAN, Acting P. J.


KELETY, J.